THOMAS H. WHALEN *vs.* THE EQUITABLE ACCIDENT COMPANY.

Penobscot.     Opinion November 14, 1904.

. *Health Insurance.   Notice.   Waiver.   Stat. 1895, c. 46.   R. S., c. 49, § 95.*

Plaintiff was insured against loss resulting from sickness caused by various diseases, among which was dysentery. The policy provided that failure to give written notice as therein provided within ten days of the date of the beginning of any sickness, should invalidate any and all claims under it. The plaintiff fell sick October 17, 1903, and no notice was given to the company or its agents of the sickness, until December 30, 1903. Within thirty days after plaintiff became sick with dysentery, but not within the first ten days of his being sick, he became insane. *Held:*—

1. The condition in the policy was a valid one, and by its terms the failure to give notice within ten days of the date of the beginning of the plaintiff's sickness invalidated all claims under the policy.

2. The provisions of Public Laws 1895, ch. 46, (R. S., ch. 49, § 95) to the effect that notice of accident, injury or death may be given to a foreign or domestic casualty or accident insurance company insuring, at any time within thirty days after the happening of an accident or injury or death, and shall be valid and binding on the company, do not extend to cases of health insurance.

3. Where a health insurance company, after the expiration of ten days from the time a party insured became ill, but before it knew the date when he

did become ill, sent blank forms for proof of claim to him to be filled out, such conduct did not constitute a waiver on its part of the provision requiring the plaintiff to notify it within ten days from the beginning of the sickness.

Exceptions by plaintiff.    Overruled.

Action brought in the Bangor Municipal Court and submitted on an agreed statement of facts.    The Judge of that Court ordered a nonsuit, and plaintiff filed exceptions. ·

The facts sufficiently appear in the opinion.

*A. L. Blanchard,* for plaintiff.          

It is contended that in accordance with the agreed statement of facts in the case that the requiring the plaintiff to fill out forms Nos. 1 and 2 constituted a waiver on the part of the company requiring the plaintiff to notify them within 10 days of the beginning of his sickness as required by the conditions of the policy.

As a second proposition the plaintiff sets forth that he is excused from giving the notice within the time prescribed by the condition in his policy, or within the time prescribed by the statutes of this state, which is thirty days from the beginning of the sickness, from the fact that at the time he became sick and was deprived of his reason by insanity; that the time for filing the proof of his claim begins to run from the date of his recovery from his insanity.    *Pratt* v. *Woodman Accident Ins. Co.,* L. R. A., 291; *Ins. Co.* v. *Boykin,* 12 Wallis, 433.

*Lewis A. Barker,* for defendant.

The condition C. in the plaintiff's policy of insurance requires that notice of the beginning of any sickness for which claim is to be made under the policy, shall be given in writing addressed to the secretary of the company in Boston, and that failure to give such written notice within ten days of the date of the beginning of such sickness shall invalidate any and all claims under this policy.

Such conditions have always been held valid and requisite to a ⸱ recovery in this state.    *Leadbetter* v. *The Etna Insurance Company,* 13 Maine, 265; *Davis* v. *Davis and Niagara Insurance Company, Trustees,* 49 Maine, 282; *Heywood* v. *Maine Mutual Accident*

*Association,* 85 Maine, 289; *Kimball* v. *Mason's Fraternal Accident Association,* 90 Maine, 183.

By section 95, chapter 49, Revised Statutes 1903, this period of notice is extended to thirty days. In the case at bar it is agreed that the plaintiff fell sick on October 17, 1903. No pretension is made that any notice whatsoever was given the company until December 30th, 1903, when the plaintiff's wife notified the company's agent at Bangor, a period of seventy-three days from the date of sickness.

This leaves only the question of whether there was a waiver by the company. *In Peabody* v. *The Fraternal Accident Association of America,* 89 Maine, 96, where it was held that the company's acts constituted a waiver, a preliminary proof having been sent three days late, the company made no objection but forwarded a second and final form. This was held to be a waiver, but is in no way applicable to the case at bar.

SITTING: EMERY, WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

SAVAGE, J. Action on a health policy issued to the plaintiff July 10, 1903, whereby he was insured for the loss of time resulting from the sickness caused by various diseases, among which was acute dysentery. The policy contained the following provision: —

"This policy is issued by the Company, and signed by the insured subject to the following provisions and conditions:

(C) Notice of the beginning of any sickness for which claim is to be made under this policy, shall be given in writing, addressed to the Secretary of the Company at Boston, stating the full name and address of the insured, with full particulars of the sickness including the date of beginning and an accurate description of the sickness; and failure to give such written notice within ten days of the date of the beginning of any sickness shall invalidate any and all claims under this policy."

The plaintiff fell sick with acute dysentery October 17, 1903, during the life of the policy, and continued sick until April 4, 1904. The parties agree that he was regularly committed to the Eastern

Maine Insane Hospital, Nov. 7, 1903, and it is a reasonable presumption that he was then insane. It does not appear how long he remained so, nor does it appear when he first became insane, nor how long he had been insane at the date of the commitment.

No notice was given to the company or any of its agents concerning the plaintiff's sickness, or his claim for insurance under the policy until Dec. 30, 1903. By the terms of the policy, the failure to give notice within ten days of the date of the beginning of any sickness invalidated all claims under it. This condition was a valid one, *Heywood* v. *Accident Association*, 85 Maine, 289, and the plaintiff must fail to recover unless he shows some legal excuse for the failure to give the notice required by the contract. *Kimball* v. *Accident Association*, 90 Maine, 183. And the burden of proof is upon the plaintiff. He seeks to sustain that burden of proof in this way. He claims that by force of public laws, 1895, ch. 46, the time within which notice might be given was extended from ten days to thirty days, so that a notice given within thirty days after he began to be sick would be sufficient. He claims that he had all of the thirty days in which to give the notice, and that before that period expired he became insane. And his insanity, it is argued, legally excused the giving of the notice.

Whether the insanity of an insured person excuses the performance of the contract as to notice on his part, is a question which we have no occasion to consider, and do not decide, for the plaintiff's case fails before we reach it. Unless the time of giving notice was extended by the statute to thirty days, as is claimed, the effect of the plaintiff's insanity is of no consequence. Unless the statute applies, he must stand by the contract. He became sick October 17. The ten days within which he was required by the policy to give notice, expired October 27. There is no proof that he was insane until November 7. All men are presumed to be sane. That presumption continues until the contrary is proved. *Weston* v. *Higgins*, 40 Maine, 102; *State* v. *Lawrence*, 57 Maine, 574. He who claims that a person previously sane became insane, or was insane, at any particular point of time, must prove it. There is nothing in this case to show that the plaintiff was not sane during the entire period

of ten days from the beginning of his sickness. It follows, even upon the plaintiff's own theory, that his claim became invalidated by failure to give notice within ten days, unless the statute referred to afforded him a longer time, and until after he became insane.

The statute of 1895, ch. 46, provided that "No conditions, stipulations or agreements contained in any application for insurance in any foreign or domestic casualty or accident insurance company, or contained in any policy issued by any such company, or in any way made by any such company, limiting the time within which notice of the accident or injury, or death, shall be given to such company, to a period of less than thirty days after the happening of the accident or injury, or death, shall be valid. Said notice may be given to the company insuring, at any time within thirty days after the happening of the accident or injury, or death and shall be valid and binding on the company."

As this statute to some extent limits the right of contract, and reads into the contract which the parties in terms have made, language which they did not use, and creates stipulations which they in fact did not agree to, we think it should not be strained to include cases which are not clearly within its terms. The statute in terms extends the time only in case of notice of "accident, or injury or death." This is not a case of accident, or injury or death. It is a case of sickness. It does not seem to have been within the contemplation of the legislature. At the time this statute was enacted there was comparatively little or no health insurance in this state. It may be that the reasons why the legislature saw fit to extend the time within which notice might be given would apply equally well to cases of insurance against loss of time for sickness, as to cases of accident, or injury, or death. But that consideration does not empower us to say what the legislature has not said. We think the statute of 1895 does not apply, and that the notice given in December was too late.

But the plaintiff urges still further, that notwithstanding the failure to give notice seasonably, the failure has been waived by the defendant company. It appears that the agent of the company was notified of plaintiff's illness Dec. 30, 1903. On the following day

he notified the company of the fact, and on Jan. 7, 1904, the company mailed to the plaintiff two blanks, one for him to make out, and one for his physician to make out, the one called "Formal Notification," form number one, and the other "Report of Attending Surgeon," form number two. These blanks were duly filled out and returned to the company, which received them on Jan. 15, 1904. These blanks so filled out conveyed to the company the first knowledge it received of the date of the beginning of the plaintiff's illness. On the same day the company wrote to the plaintiff, calling his attention to the fact that he had failed to comply with the condition in question, and informed him that he had no claim which could be recognized.

It is contended by the plaintiff that the acts of the company, after the notice in January, 1904, in sending blank forms to the plaintiff to be filled out, constituted a waiver on the part of the company of the provision requiring the plaintiff to notify them within ten days from beginning of his sickness. The plaintiff relies upon *Peabody* v. *Accident Association,* 89 Maine, 96. But that case differs widely from this, so far as relates to the facts which were evidence of a waiver. There the company furnished blanks to be filled out, knowing all of the facts. The time within which notice of loss was to be given had expired, but the company knew it, and yet led the injured party to go to the trouble and expense of filling out blanks and forwarding them. And as said by the court in that case, "it would have been an inexcusable imposition to invite the plaintiff to make up proofs of loss, when the intention of the company was to wholly disregard the same, whatever might be the result of their investigation." In this case, so far as appears, neither the agent nor the company had any knowledge whatever of the date when the plaintiff's illness began at the time the company forwarded him blanks to be filled out. If its officers or agents did not know that ten days had already elapsed since he began to be ill, the mere fact of sending the blanks would not be proof of waiver. Waiver is a matter of intention. One cannot be said to waive that which he does not know. *Marcoux* v. *Society of St. John Baptist,* 91 Maine, 250. The conduct of the defendant company, taken as a whole, not only shows no

waiver, but shows affirmatively that there was no intention to waive.

Therefore the action is not maintainable. The court below correctly ordered a nonsuit.

*Exceptions overruled.*