**Bobby Jo STEWARD, Plaintiff-Appellant,**

v.

**CITY OF MT. VERNON, Indiana, Defendant-Appellee.**

No. 87A01-8603-CV-79.

Court of Appeals of Indiana, First District.

Sept. 25, 1986.

Joseph A. Yocum, Evansville, for plaintiff-appellant.

S. Brent Almon, Hawley, Hudson & Almon, Mount Vernon, for defendant-appellee.

RATLIFF, Judge.

### STATEMENT OF THE CASE

Bobby Jo Steward appeals the trial court's involuntary dismissal, pursuant to Indiana Rules of Procedure, Trial Rule 41(B), of his claim that the City of Mount Vernon was negligent in processing his application for major medical and hospitalization insurance. We affirm.

### FACTS

The City of Mount Vernon (City) is a municipal corporation within Indiana. Mutual Medical Insurance and Mutual Hospitalization Insurance, Inc. is an insurance company doing business in Indiana as Blue Cross and Blue Shield of Indiana (Blue Cross). Subject to the provisions of the Master Policy, the city, as an employer, provides that every regular, full-time city employee is eligible to apply for Blue Cross insurance membership within thirty days of the date of employment. The city submits applications of employees prior to the date of eligibility and keeps all necessary records regarding membership. In addi-tion, the city holds an annual re-opening period for non-members, policy reclassifications, and policy transfers on the policy anniversary date, April 15.

Bobby Jo Steward has been employed continuously as a police officer for the city since June 10, 1968. On April 14, 1983, Steward withdrew from his Blue Cross coverage by executing and delivering a cancellation of deduction authorization form to the city's clerk. Thereafter, Blue Cross terminated Steward's insurance coverage.

On October 3, 1983, Steward reapplied for coverage under Blue Cross by executing and delivering an application to the city's clerk, which the city forwarded to Blue Cross on October 5, 1983. On October 24, 1983, the city clerk received correspondence from Blue Cross requesting additional information on Steward's application. The clerk delivered this request to Steward the following day, to which Steward drafted a letter. On October 27, 1983, Steward's letter and response to the request for additional information were forwarded to Blue Cross by the city clerk. On January 3, 1984, the city clerk received notification from Blue Cross, dated December 28, 1983, denying Steward's application requesting coverage. The clerk transmitted the denial letter to Steward the next day.

On January 16, 1984, the city clerk received a $303.40 refund from Blue Cross of premiums paid on Steward's behalf. That same day, the city clerk wrote Blue Cross requesting an additional refund on behalf of Steward, which the city received on February 22, 1984. On March 6, 1984, the city issued a check to Steward for $95.00, which constituted the full amount of premiums withheld from Steward's wages but not accepted by Blue Cross.

From and after October 4, 1983, Steward and his family incurred medical expenses amounting to $17,690.13. The majority of these expenses, $13,594.01, were paid by Steward's wife's insurance plan, leaving a balance of $4,096.12 unpaid. It must be noted, however, that only $185.00 in medical bills were incurred from the time of

Steward's reapplication in October until his receipt of notice denying his application in January of 1984.

Steward filed a complaint on March 22, 1984, against the city seeking to recover medical expenses. Steward alleged negligence on the part of the city in failing to advise him that he did not have insurance coverage for medical and hospital expenses and in waiting an unreasonable length of time to inform him of the lack of coverage. Steward also alleged the city was negligent in failing to notify and advise him of the eligibility requirements pertaining to renewal or reinstatement of insurance coverage after cancellation thereof. Steward further alleged the city was negligent in failing to request, on his behalf, an exception to the Master Policy eligibility requirements. At the close of Steward's case, in a bench trial, the trial court granted the city's Trial Rule 41(B) motion for involuntary dismissal. Thereafter, Steward perfected this appeal.

### ISSUES

Steward presents three issues for review which we have subsumed into the following:

1. Whether the trial court erred in finding the City was not negligent in processing Steward's application for insurance and finding that any delay in determining Steward's eligibility or giving him notice thereof was the fault of Blue Cross.

2. Whether the trial court erred in finding Steward failed to mitigate his damages by seeking other insurance coverage.

### DISCUSSION AND DECISION

*Issue One*

At the outset it must be noted that Steward is appealing from a negative judgment. A party appealing a negative judgment must show that the trial court's judgment is contrary to law. *Communications Workers of America, Local 5701 v. Drake* (1985), Ind.App., 487 N.E.2d 821, 823. Thus, in order to grant relief from a negative judgment, we must find that the

evidence leads solely to a conclusion opposite that reached by the trial court. *Roberts v. Wabash Life Insurance Co.* (1980), Ind.App., 410 N.E.2d 1377, 1382, *trans. denied.*

The relationship of agent and principal is confidential and fiduciary and requires the agent to exercise good faith and loyalty. *Montgomery Ward and Co. v. Tackett* (1975), 163 Ind.App. 211, 216–17, 323 N.E.2d 242, 246; *Carmichael v. Lavengood* (1942), 112 Ind.App. 144, 151, 44 N.E.2d 177, 180. The principal and agent relationship also imposes certain duties and obligations on the principal. A principal must exercise good faith and care to prevent the agent from suffering harm during the existence of the relationship. *Bulla v. Donahue* (1977), 174 Ind.App. 123, 130, 366 N.E.2d 233, 238; *Montgomery Ward*, 163 Ind.App. at 217, 323 N.E.2d at 246. In addition, there is an implied obligation to do nothing to thwart the effectiveness of the agency. *Bulla*, 174 Ind.App. at 130, 366 N.E.2d at 238; *Montgomery Ward*, 163 Ind.App. at 217, 323 N.E.2d at 246. In the absence of an express agreement, an agent is not an insurer of the success of an undertaking and if he acts with good faith and due care he is not liable for losses resulting from mere mistake. *Carmichael*, 112 Ind.App. at 151–52, 44 N.E.2d at 180.

An insurance broker or agent who agrees to procure insurance for another is an agent of the proposed insured, and thus owes his principal a duty to exercise reasonable skill, care, and diligence in effecting the insurance. *Bulla*, 174 Ind.App. at 126, 366 N.E.2d at 236. Therefore, if an agent undertakes to procure insurance and through his neglect and fault fails to do so, he is liable to his principal for any damage resulting therefrom. *Id.* There is also an implied corresponding duty, in an undertaking to procure insurance, to notify the applicant in the event the agent is unable to obtain insurance. *Id.* Thus, an insurance agent must use reasonable care and dil-

igence in acquiring insurance for an applicant.

Under Indiana law, when an employer negotiates a group insurance contract with an insurance company, the employer acts as the agent of its employees, not of the insurance company. *Sur v. Glidden-Durkee, a Div. of S.C.M. Corp.* (7th Cir.1982), 681 F.2d 490, 493 (applying Indiana law); *Metropolitan Life Insurance Co. v. Henry* (1940), 217 Ind. 33, 36, 24 N.E.2d 918, 920; *Prudential Insurance Co. v. Lancaster* (1966), 139 Ind.App. 292, 297, 219 N.E.2d 607, 610; *Morales v. Equitable Life Assurance Society* (1945), 115 Ind.App. 565, 567, 60 N.E.2d 747, 748. Thus, in negotiating for an insurance policy, deducting premiums from employees' pay, and remitting them to an insurance company, an employer acts in the capacity of agent for the employees. *Henry*, 217 Ind. at 36, 24 N.E.2d at 920; *Prudential*, 139 Ind.App. at 297, 219 N.E.2d at 610. As such, employers are also required to exercise good faith and due diligence in obtaining adequate insurance for their employees. *Sur*, at 493. It is also a general rule that an insured has a duty to learn the contents of his policy and is charged with knowledge thereof. *Ohio Casualty Insurance Co. v. Rynearson* (7th Cir.1974), 507 F.2d 573, 581, citing *Metropolitan Life Insurance Co. v. Alterovitz* (1938), 214 Ind. 186, 198, 203, 14 N.E.2d 570, 574, 577; *Union Assurance Society, Ltd. v. Reneer* (1927), 86 Ind.App. 240, 244, 156 N.E. 833, 834. This is merely an extension of the well known rule that knowledge on the part of an agent is imputed to his principal. *Henry*, 217 Ind. at 36, 24 N.E.2d at 920. Therefore, in the case of group insurance policies, where a master plan is delivered to the employer, the employer is deemed to know the provisions of the policy, and that knowledge is imputed to the employees since the employer is their agent. *Henry*, at 36, 24 N.E.2d at 920; *Morales*, 115 Ind. App. at 567, 60 N.E.2d at 748.

In the present case, the city did not breach its duty to Steward. The city procured a comprehensive medical and hospitalization plan for its employees through Blue Cross in which they could choose to participate. The city quickly transmitted Steward's insurance application and any other correspondence between Steward and Blue Cross; in fact, usually within twenty-four hours. The city notified Steward of Blue Cross' rejection of his application the day after it received notification from Blue Cross. There is none of the misrepresentation found in *Bulla* or *Sur* present in this case. On the contrary, the city acted in good faith and used due diligence in processing Steward's application and keeping him informed of its status. Moreover, Steward had a duty to know the contents of the insurance policy. Instead, Steward reapplied for coverage in October, far from the April policy anniversary date. In addition, Steward did not request the city to apply for an exception to this requirement. Steward's assertion that the withholding of premiums from his pay by the city constituted misrepresentation that he was insured is also flawed. The trial court found, and we agree, any delay in informing Steward whether he was insured was caused by Blue Cross. The city merely collected premiums in anticipation of a decision by Blue Cross. Upon learning of Blue Cross' decision rejecting Steward's claim, the city refunded to Steward all of the premiums withheld from his pay. The city did not tell Steward he was insured after he submitted his application, nor did Steward present evidence indicating that he presumed the city was seeking an exception to the policy's underwriting requirements.

Within this context, Steward also asserts the trial court erred in concluding the city was immune under Indiana Code section 34-4-16.5-3, despite the fact that the parties stipulated that the city was a political subdivision of the state and therefore entitled to the immunities set forth under this statute. In pertinent part this section states:

"A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

(9) The act or omission of someone other than the governmental entity employee; . . .

(13) Misrepresentation if unintentional;"

Under this section, the City would be immune from liability for any loss caused by delay on Blue Cross' part. However, Steward appears to argue, albeit in a less than clear way, that the trial court's failure to make a finding of fact concluding that the city was the agent of Steward, precluded the court from finding the existence of this affirmative defense when the city had not presented any evidence. Thus, Steward argues that the trial court could not make findings that any misrepresentation on the city's part was unintentional because no evidence was presented by the city, and we cannot presume a material issue of fact. Indiana Rules of Procedure, Trial Rule 52(D). However, nothing in T.R. 52(D) prevents a trial court from finding for a defendant on an affirmative defense before the defendant presents evidence. We agree with the city that to hold otherwise would be tantamount to finding that a jury or court could not find for a defendant upon an affirmative defense where the defendant rested after the plaintiff's case. Therefore, the trial court did not err in determining that the city was not negligent in discharging any duty it owed to Steward nor did the trial court err in determining that any delay in determining Steward's eligibility or giving him notice thereof was caused by Blue Cross, and that the city was immune from liability due to Blue Cross' delay or any unintentional misrepresentation.

*Issue Two*

Steward also argues the trial court erred in finding that Steward failed to mitigate his damages by seeking other insurance coverage. As a general rule a plaintiff claiming injury through the negligence of another has a duty to mitigate his damages. *Indiana Pipe Line Co. v. Christensen* (1924), 195 Ind. 106, 120, 143 N.E. 596, 601; 11 *Williston on Contracts* § 1353 at 274 (3d ed. 1968). Steward argues that the city had equal opportunity and knowledge of the consequences and therefore cannot claim he failed to mitigate his damages.

Steward, however, did not carry his burden of avoiding damages. The city exercised its duty to employees by procuring the group insurance policy through Blue Cross and did not have a duty to seek insurance outside that policy for Steward. The city had no knowledge of Steward's medical expenses. Steward did not ask the city to seek an exception to the eligibility requirements nor did he presume the city was doing so on his behalf. Record at 38. Moreover, Steward admitted that he did not seek any other insurance coverage until 1985, more than a year after being notified his application to Blue Cross was rejected and after the medical expenses he seeks to recover were incurred. Record at 38–41. Steward incurred only $185.00 in medical expenses while awaiting a decision from Blue Cross on his application. The city played no part in this decision and the expenses incurred during this period were the result of the delay by Blue Cross. Given our standard of review when a party appeals a negative judgment, which permits us to reverse only where the evidence leads solely to a conclusion opposite that reached by the trial court, we find the trial court did not err in concluding that Steward failed to mitigate his damages.

We therefore affirm the judgment of the trial court.

ROBERTSON, P.J., and NEAL, J., concur.